case number 19-1202. Freddie Chase v. Matt MaCauley. Oral arguments not to exceed 15 minutes per side. Ms. Melissa M. Salinas, supervising attorney. Good morning and may it please the court. My name is Melissa Salinas from the University of Michigan Law School and I am the supervising attorney for appellant Freddie Chase. I would like to thank the court for allowing law students to argue this case. And I have the honor of introducing law student Nina Cahill who will present the opening 10 minutes of the argument and law student Maggie Turner who will present the rebuttal. That's fine and good morning to you and you may proceed Ms. Cahill whenever you are ready. Okay. Good morning and may it please the court. My name is Nina Cahill on behalf of Mr. Freddie Chase. At this time I'd like to reserve five minutes for rebuttal. That's fine. Thank you. So today we'd like to address what should be this court's main focus, which is whether the ineffective assistance of Mr. Chase's appellate counsel can excuse the procedural default of his underlying allegiance. And the answer is yes. The state does not dispute here that when Mr. Chase was sentenced, the trial court used judge found facts to score sentencing variables which increased the mandatory minimum sentence to which he was exposed in violation of a lien. So this court should find that appellate counsel's failure to raise that meritorious a lien claim was constitutionally deficient under Strickland, establishing cause and prejudice to excuse the procedural default of the lien claim. And as this court is aware, under Joseph B. Coyle, a Strickland violation asserted as cause is subject to the no vote review. To get to the heart of the Strickland deficient performance question to begin, appellate counsel's failure to raise an a lien claim here was objectively unreasonable, despite the Michigan Court of Appeals' care and decision, because counsel should have understood that the fact finding at sentencing was unconstitutional based on both a clear application of a lien to the Michigan scheme and existing state law development that foreshadowed that the Michigan Supreme Court would find the scheme unconstitutional. So under the multifactor MAPES test for deficient performance on appeal, this court asked whether the omitted claims were significant and obvious and whether they were clearly stronger than those issues that were presented. And the significant and obvious nature of the omitted a lien claim here, so as it would have appeared to counsel at the time, is illustrated by this court's 2018 decision in Robinson v. Woods. And there the court considered a lien claim, a defendant raised in the Michigan Court of Appeals in 2013, only a month and a half after a lien was decided. Counsel, this is Judge Batzelder. This is Judge Batzelder. Does it make any difference that Robinson was on direct appeal and not on habeas or post conviction? Your Honor, in Robinson, the court considered a defendant's habeas claim, if that's speaking to your question, and applied a deference to the Michigan Court of Appeals denial of the petitioner's a lien claim. So it was considering the Michigan Court of Appeals denial of that claim in June of 2013, if that speaks to your question. And so, of course, Robinson does not direct the decision here, but it does illustrate the strength of a lien claim at that time, and the clarity with which a lien applies to the Michigan sentencing scheme. And so where a lien claim is so obvious that it is contrary to clearly established law, for a Michigan Court of Appeals to reject it, Counsel, this is Judge Strach. How do you account for the Heron decision? How does that fit in with your analysis? Doesn't that considerably muddy the water? Thank you, Judge Strach. No. So Heron did not obscure the clarity of the law here, because under the rule established by the circuit in Lucas C. Day, a 1999 Sixth Circuit case, the failure to raise an issue whose resolution is clearly foreshadowed by state law, can constitute an effective defense. And state law developments, while Mr. Chase's case was pending on direct appeal, foreshadowed that the Lockridge Court, the Michigan Supreme Court in Lockridge, would invalidate the sentencing scheme, despite the Heron decision. And so those developments are as follows. So first, the Michigan Court of Appeals' last opinion was decided before Counsel filed an opening brief here, and forceful concurrences pointed out Heron's erroneous reasoning and foreshadowed the exact reasoning, in fact, that the Michigan Supreme Court adopted a year later. The second important development, while Chase's case was on direct appeal, is that the highest court in Michigan, the Michigan Supreme Court, which had not spoken to the issue since before Alene, actually graces Lee to appeal in Lockridge and in Heron itself. And, of course, these developments take on additional significance when we consider that Heron relied on Michigan cases that applied Harris, the case which Alene explicitly overruled. And no Michigan court other than Heron had had the opportunity to independently consider that issue's merit after it was decided because of the court rule here, making this unlike Thompson, the case on which the state relies, where eight out of 12 Ohio courts have independently considered and rejected a plea claim. And these elements of state law combine with the clarity of Alene's description of the exact judicial fact-finding that was required by the Michigan scheme, holding so clear that this court in Robinson found it was contrary to clearly established law for state courts. Counselor, this is Judge Strange. Does it matter that Chase's attorney filed the opening brief before the Supreme Court had even granted right to the defendant for leave to appeal Lockridge? So, Judge Strange, while it is true that counsel filed his opening brief before that certificate or that leave to appeal was granted, so first the Michigan Court of Appeals Lockridge opinion with those forceful and strongly reasoned concurrences from Judges Buckering and Shapiro was decided before the opening brief was filed at first. Second, Alene itself, of course, was decided before the opening brief was filed and very clearly foreshadowed that this type of fact-finding was unconstitutional. And while the leave to appeal was granted after that opening brief was filed, there's at least a reasonable probability sufficient to satisfy Strickland that the Michigan Court of Appeals has recognized where it accurately advised as to the state of the law by Mr. Chase's counsel that the court could have potentially held this case in advance pending resolution of this question, this important constitutional question in the Michigan Supreme Court. But both a clear Supreme Court precedent as well as state court development prior to the filing of Mr. Chase's opening brief also foreshadowed this issue's resolution. And this is additionally important because under the NAPES test, that test is inherently comparative. So this court compares the strength of the NAPES plan with the claims that are actually raised on direct appeal to decide whether counsel made the objectively reasonable choice that Strickland requires in failing to raise that claim. And so here, instead of raising this strong claim violation that raised his client's minimum sentence by nearly 12 years, counsel chose to raise a challenge based on the failure to request an adverse instruction because of a 9-1-1 call, a claim which the Michigan Court of Appeals characterized as both meritless and as perhaps having no supporting evidence based on the record. And so the hallmark of appellate advocacy, of effective appellate advocacy, is the winnowing out of weak arguments on appeal to focus on those that are more likely to prevail. The exact opposite of that occurs here. And so this distinguishes this case further from Thompson. In Thompson, counsel was not ineffective where he raised what this court characterized as five reasonably worthwhile claims in contrast with the weaker claim that counsel omitted. It also makes this case more like Banning, which Thompson distinguished, where counsel raised only a single claim. And there, it was unreasonable for counsel to choose the claim that he chose, just like here. And so Thompson's language simply restates the general rule that counsel, of course, need not preserve every claim that may fail in an intermediate court in the mere hope of later success on appeal. But Thompson also reaffirmed and restated O'Day's corollary rule, which requires that counsel raise issues which are clearly foreshadowed, as this one was by both strong Supreme Court precedent and the trajectory of Michigan state law, which showed that Heron was an outlier, that it was erroneous, and that the Michigan Supreme Court would overturn it when it had the chance to speak. I see that my time is out. If the court has no further questions, we will reserve the rest of our time for it. Okay. Thank you, counsel. Thank you. We're next for Mr. Shimkus. Yes, Your Honor. Good morning. Good morning. So good morning, Your Honors, and may it please the court. Assistant Attorney General Scott Shimkus appearing on behalf of Respondent Matt McCauley. So the state agrees that there really is only one question before the court today, and that question is, can Petitioner Freddie Chase establish that his appellate counsel provided ineffective assistance on direct appeal for not raising a claim under a lien versus United States? The answer, Your Honors, is simple. No, he cannot. Chase asked this court to hold appellate counsel to an impossible standard, and that is to predict the future. Controlling Michigan law during Chase's direct appeal foreclosed a lien claim, and appellate counsel was not required to anticipate the change in that law. Counselor, this is Judge Strach. If that's the basis of the argument, then why did so many other counsels for defendant, in fact, file a lien claim during that time period and ultimately obtain this relief for their clients? So, Your Honors, just because the other counsels had raised this claim, I do think it's important to define when counsel raised those claims. So if counsel raised those claims before people versus hearing was decided, then essentially the floor was open for those arguments to be raised. But as soon as there came a published decision from the Michigan Court of Appeals that said a lien does not apply in Michigan, then at that point it really became meritless or baseless for counsel to raise that claim. Now, granted, certainly some counsels did still raise that claim in an effort to sort of rebut that decision. But because there was a published decision that rendered that claim necessarily meritless, and at that point making the only purpose of raising the claim to preserve it, that doesn't mean that counsel was ineffective for not preserving it. And for example, we see in people versus Robinson, Robinson, the Michigan Court of Appeals, rendered their decision before hearing came down. So it made sense that counsel in Robinson could have raised that claim at that time. But then hearing came out, and hearing was the controlling law at the time that Mr. Chase's federal, or excuse me, appellate counsel filed the brief. And so really hearing is the decision here that- And that included the two concurring opinions explaining why Heron was wrongly decided and why the Michigan sentencing scheme was in violation of a lien. That occurred in February of 2014, and Chase didn't file until March 20 of 14. So why wouldn't Lockridge's two concurring opinions have given counsel the knowledge necessary to preserve an lien claim? So, Your Honor, the timeline that you presented is absolutely correct. The Lockridge-Michigan Court of Appeals decision had certainly come down, and those concurrences, excuse me, were there. But that still doesn't mean that counsel was required, was constitutionally ineffective, for failing to argue that a published decision was incorrect, especially when there were other published decisions, including Lockridge itself, that affirmed the Heron decision. And it wasn't until at least a little bit of time later that the Michigan Supreme Court granted leave in Lockridge, which obviously opposing counsel has raised as a point here. But even the granting of the application for leave in Lockridge didn't indicate what the outcome of that case would be. I think that was just the Michigan Supreme Court recognizing that this issue was out there and a definitive decision one way or another was needed. But nothing about the granting of leave or the order granting leave itself indicated that the Supreme Court would, in fact, reverse Heron and Lockridge and the several other published decisions from the Court of Appeals that said a lien does not apply in Michigan. And with that background, there was no need for counsel to raise this claim. That's why this case aligns so well with Thompson v. Ordon-Belmont Correctional Institution, with really the only difference being in Thompson the decision issue was Blakely, and in this case the decision issue is a lien. But otherwise, the case is trapped almost identically, that the legal landscape at the time in Thompson was that any issue under Blakely would have been meritless if counsel had raised that claim in the intermediate appellate court. Counsel, doesn't our Lobbins case specifically say that counsel can be found deficient if he fails to raise the claim whose merit is clearly foreshadowed at the time? Now, that's not a determination. That statement is about foreshadowing. So why doesn't Lobbins control? So you're describing the case accurately for certainly Judge Trench. The issue seems to be is how strong is that foreshadowing? In this case, the foreshadowing wasn't strong at all when we had multiple published decisions from the Court of Appeals saying that a lien did not apply. Really, the only thing that was out there is what you had pointed to before, Judge Trench, which was those concurrences in the Lockridge, Michigan Court of Appeals decision. That is not... Help me out. Counsel, I'm also looking at Lucas v. O'Day, which was decided in the Sixth Circuit case. And it says that even if there's binding precedent, there can be instances of ineffective assistance of counsel based upon counsel's failure to make an argument that would have been rejected under then-prevailing law. Why doesn't this case fit those two narrow circumstances from Lucas and Lobbins? So as I said before with the foreshadowing point, it should matter how strong that foreshadowing was. And with respect to Lucas, it would depend on... I think with that case... Pardon? I'm sorry, you cut out. Oh, that's all right. Oh, okay. I just wanted to make sure I was giving an opportunity for a question. I didn't want to step on any toes. But with respect to the Lucas decision, Judge Strange, I think we... As I said before, with Thompson, we have an indication that if there is virtually... The language used in Thompson is virtually no chance of success. Then the same really is true here. Even with the Lucas decision saying that the claim might have been rejected, I think that, again, goes to the Robbins point of foreshadowing and how strong that foreshadowing was. Hasn't this court in Robinson said that foreshadowing was clear from the beginning? Doesn't Robinson say that? Yes, Your Honor. Robinson does say it should have been. But again, I think even with Robinson, same as Lockridge. So Lockridge came down sometime after Chase's direct appeal concluded, and obviously Robinson came even later. So now in addition to saying that appellate counsel in Chase's case should have anticipated not only Lockridge but the Robinson decision as well, that cannot be the standard for evaluating appellate counsel's effectiveness to predict the future. It's certainly true that Robinson said Alene clearly established that Michigan sentencing scheme essentially created a Sixth Amendment violation. But the question here isn't whether Robinson's holding is what it is or whether a subsequent decision determined that Alene did apply in Michigan. The question is whether appellate counsel should be deemed ineffective for failing to predict that those decisions would be rendered. And again, this asks appellate counsel to now not only raise every colorable claim that could entitle the defendant to release, but every colorable claim that could be presented to a court, which is already not a standard that we hold appellate counsel to. But now we're asking counsel to raise every colorable claim under some future legal landscape, just in case the law might change. Well, I guess, counsel, my question would be that depends on foreshadowing, doesn't it? And this is not a minuscule claim. This is not we're changing what the jury instructions would be or we're relooking at another issue of whether it's a crime of violence. This is a constitutional right to have decisions made by a jury rather than a judge. That is a really significant issue. So I'm struggling with an argument that it seems to me under your argument, our Chase, our Lucas case, and then our Robbins case are meaningless. Because there's never anybody who can thread that needle to say that should have been raised. So I certainly don't disagree that this is that really any constitutional claim is going to be significant. And this is certainly one of them that I don't ever mean to undermine that notion. But to the to the point that Lucas and Robinson might be meaningless, I don't think that's necessarily true. I think it really depends on the strength of that foreshadowing. I know I've said that several times, but I think it's because that's important. If the writing is on the wall, then it makes sense that appellate counsel should be raising those claims, preserving those claims. But if the writing on the wall is this is a losing claim and there's only a possibility, not even any sort of probability that the law will change, then it really seems to be an impossible standard to hold appellate counsel to to raise every conceivable claim just in case the law might change. I think that really is the point of the holding in Thompson, that there was there was no need for counsel to preserve that claim when it would have surely lost. We even see in Harrington v. Richter, the court saying an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appears to be remote possibilities. And here I think it really was a remote possibility that the law might change in Mr. Chase's favor. Let me ask you on Heron, was that a full analysis of the Elaine issue? That was a Michigan appellate court, not the Michigan Supreme Court. But Heron, was that a all on full examination of the Elaine issue? Because I don't remember that. Am I remembering that incorrectly? Your Honor, may I ask what you mean by a full analysis? I mean more than a fairly brief statement and then a conclusion that the Michigan sentencing scheme is upheld. It doesn't violate Elaine. Your Honor, I'll be honest, I don't directly recall how in depth the analysis was. If it was anything less than what you're describing, the reason very well could have been that because Elaine was based so strongly on Apprendi and Blakely, it wasn't inconceivable that Michigan courts would determine that Elaine did not apply in Michigan because Blakely and Apprendi did not necessarily apply in Michigan in terms of how Michigan's sentencing scheme had been arranged. And so with respect to the analysis in Heron, that very well could have been why. In fact, looking at Heron right now, that they do discuss Apprendi and Blakely in terms of how the Elaine analysis should be applied. And so like I said, Heron is not even the only decision. Even federal law at the time, we have United States versus Cooper and James as well, that indicated that Elaine was based on increasing a statutory mandatory minimum. It didn't discuss guidelines, whether state or federal, and how the case might apply with respect to guideline scoring versus increasing a statutory mandatory minimum. And because of those cases, there was plenty of case law out there that said Elaine did not apply in Michigan, and therefore appellate counsel was not required to raise that claim on cases direct appeal, and it therefore cannot excuse his procedural default. For all these reasons, Your Honors, unless you have any further questions, we would ask that you affirm. Okay, thank you, Mr. Simkus. We'll hear rebuttal from Ms. Turner, I believe. Yes. You may proceed. Good morning, Your Honors, and may it please the Court. My name is Maggie Turner on behalf of Petitioner Chase. In my limited time on rebuttal, I want to make clear the strength of the foreshadowing at issue here under Lucas versus O'Day. Due to the trajectory of state law at the time Chase's direct appeal was pending. Now, in looking at foreshadowing, we are not asking this Court to hold that counsel is always required to raise, as the state put it, every conceivable claim that might fail at the intermediate appellate level in the mere hope of a later decision. It's undisputed that it's a rare case that satisfies this standard, but Chase's case sat at a unique juncture. Alene's decision itself and four aspects of Michigan law at the time show the strength of this foreshadowing. First, no Michigan appellate court other than Heron had independently considered the issue's merit. Due to a Michigan court rule, the published decisions that the state refers to after Heron as affirming the Heron decision were in fact just affirming the Michigan court rule with simple one-line adjudications that they were not allowed to address that issue. And this is punctuated by the fact that Heron itself relied on Harris, which Alene explicitly overruled. This means that per Judge Stranch's point, it could not have been a full analysis of the question. Additionally, the highest court in Michigan granted leave to appeal in Lockridge and in Heron itself. And finally, it's important to recognize that the concurrences in the Michigan Court of Appeals Lockridge opinion foreshadowed the exact reasoning and remedy the Michigan Supreme Court would adopt a year later. Chase's case is therefore the best example of the unique case that O'Day contemplates, and that the threading of the needle, as mentioned earlier, would be meaningless otherwise if it was not held to apply here. And additionally, Your Honors, this court's Thompson decision is distinguishable for two reasons. First, this trajectory of state law. In Thompson, there was a collective reasoned judgment of the vast majority of state intermediate appellate courts, and this court even characterized the Ohio Supreme Court's eventual invalidation of that sentencing scheme as an abrupt change from precedent. It's contrary to Chase's case here, where the writing was truly on the wall. As Judge Stranch mentioned, Robinson showed how clearly foreshadowed it was from the very beginning, even before Heron. And it's clear that Chase is caught in the narrow window between the Michigan Supreme Court agreeing to resolve an issue for which there could only be one reasonable answer, and the day that decision actually came down. And O'Day recognizes this situation and fills that gap. And Thompson is further distinguishable due to the strength of the claims actually raised. This court has stated that strategy cannot be an accused lawyer's talisman, but counsel has a duty under Strickland to investigate his options and make a reasonable choice between them. In Thompson, five worthwhile claims were raised as opposed to a meritless claim involving a 911 recording here, as opposed to the undisputed Lane violation. And just to be clear, the counsel's failure to raise a meritorious claim on direct appeal is particularly important, where the claim has stark consequences for the petitioner. Chase was exposed to a mandatory minimum 135 months higher than he would have been otherwise, which is over 11 years. And additionally, Your Honors, in referring to Robinson coming down before the Heron decision, this court stated specifically in Robinson that the Lane violation was so clear that no court of appeals could reasonably disagree with its merit at the time. So the fact that the Michigan Court of Appeals later did in Heron further shows the erroneous nature of that decision, and the fact that the Michigan Supreme Court would imminently rectify that error. And to speak to the foreshadowing point again, the Michigan Supreme Court granting leave to appeal in Lockridge is particularly important, even after the fact that the opening brief was filed, because cases O'Day relied upon took this into account and found counsel ineffective. Additionally, district courts in this circuit have found that state law developments under the O'Day standard occurring while direct appeal was still pending, but after the opening brief was filed are relevant to this analysis. And if I may briefly conclude, the relief that we ask for is the same relief granted in Robinson, which is a conditional writ provided that the state initiate a full plenary sentencing hearing. Unless this court has further questions, we ask this court to reverse the district court's denial of habeas relief. Okay. Well, I'd like to thank counsel, well, all counsel, I should say. Ms. Salinas, I certainly want to thank you for your supervisory role at the University of Michigan Law School Clinic, and I'd like to thank Ms. Cahill and Turner for your arguments this morning. You did, at least from my perspective, just an excellent job, and I can see how well prepared you were for today's argument. And the clinic has accepted this case under the Criminal Justice Act, and that's a great service to certainly the petitioner appellate here, but also to our system at large. And I don't want to leave you out, Mr. Shumkus. I want to thank you for your argument this morning as well. So, counsel, you've all done a fine job of presenting the case to the court, and we will take it under submission and have a written decision for you in due course. And so, Leon, you may call the next case.